## In the Matter of the Petition of the NEW YORK CABLE RAILWAY COMPANY, Appellant.

The provision of the act of 1870 (Chap. 135, Laws of 1870), authorizing the making and filing of amended certificates where an informality exists in the original certificate of incorporation of " any corporation organized under any general act for the formation of companies," and declaring that " upon the making and filing of such amended certificate the said corporation shall, for all purposes, be deemed and taken to be a corporation from the time of filing such original certificate," does not apply to the Rapid Transit Act of 1875 (Chap. 606, Laws of 1875).

Under the Rapid Transit Act no power is given to the commissioners appointed by the mayor of a city, after they have once completed articles of association and delivered the certificate in attempted compliance with the act, to reconvene and amend or reform either articles or certificate; the delivery of the certificate terminates their duties and ends their office.

The jurisdiction of the General Term of the Supreme Court to appoint commissioners under the Rapid Transit Act, to determine whether a proposed railway ought to be constructed depends upon a refusal of the property owners and local authorities to consent; these, when applied to for their consent, must have offered to them, as a necessary prerequisite, plans as prescribed by the act, and which leave no essential or material portions to the discretion of the company's directors.

The plans presented by the petitioner herein were fatally defective in this particular, and the property owners refused their consent; thereupon commissioners were appointed by the Supreme Court to determine as to the necessity of the railway described in the petition. The General Term denied a motion to confirm the report of the commissioners on the ground that the articles of association, as prepared by the mayor's commissioners, did not comply with the requirement of the Rapid Transit Act, in that they did not provide for a release and forfeiture to the supervisors of the county of all the rights and franchises of the company

in case of failure to complete the railways in the prescribed time; also, that said commissioners had not decided upon plans for the construction of said railways; a meeting of the mayor's commissioners was thereupon called, and they proceeded to amend the articles by inserting the prescribed provision for release and forfeiture and to make locations of the works and detailed plans of construction. The directors of the company met, ratified and approved the action of the commissioners and filed an amended certificate of incorporation. The petitioner then moved at the General Term for a rehearing of the motion to confirm the report of the commissioners appointed by that court, and also for an order remanding to said commissioners their report for a further hearing. The motions were denied on the ground that the General Term had no jurisdiction to grant the same. *Held*, no error.

(Argued February 28, 1888; decided March 20, 1888.)

APPEAL from an order of the General Term of the Supreme Court in the first judicial department, made June 18, 1887, which denied petitioner's application for a rehearing of a motion to confirm the report of the commissioners originally appointed by the General Term to determine whether the petitioner's proposed railways ought to be constructed and operated; and also denying an application for an order remanding to said commissioners their report for a further hearing. (Reported below, 45 Hun, 153.)

It appears from the order appealed from, that the denial of these motions was made wholly and solely upon legal grounds and legal objections; the court considering that it was without jurisdiction to grant the same.

In December, 1884, upon application of the petitioner, the General Term made an order appointing Guy R. Pelton, Edward R. Bacon and Le Roy B. Crane, commissioners to determine whether the proposed railways of the petitioner ought to be constructed and operated. The application for the order was made by the petitioner, and the order recites that the appointment was made pursuant to section 4 of chapter 606 of the Laws of 1875. In January, 1885, on a like application, and claiming to act under like authority, a supplemental order was made appointing William C. Traphagen commissioner in

place and stead of Edward R. Bacon. On July 31, 1885, commissioners Pelton, Crane and Traphagen made their report in favor of the construction and operation of the proposed railways of the petitioner. On the 28th of June, 1886, the General Term denied an application on the part of the petitioner to confirm the report of said commissioners. The petitioner appealed to the Court of Appeals, where the order was affirmed. (*N. Y. Cable Co.* v. *Mayor, etc.,* 104 N. Y. 1.) Subsequent to the decision of this court, three of the five members of the mayor's commission, by which the routes of the petitioner's railways were originally located and the plans of such railways determined, met and attempted to amend the location of the routes, and the plans of the railway in an endeavor to cure the defects which the Court of Appeals had adjudged to exist in the organization of the petitioner as a corporation. The directors of the petitioner also attempted to amend its articles of association, so as to cure the defect which had been adjudged to exist in them, as respects the clause relating to the forfeiture of the franchises of the petitioner.. Thereupon the petitioner made the application from the order denying which this appeal is brought.

Further facts appear in the opinion.

*William M. Evarts, Everett P. Wheeler, Robert Sewell, Esek Cowen* and *Charles P. Shaw* for appellant. The scope of the act of 1870 (Chap. 135), being ascertained, the words are to be construed as including every case clearly within that object, if this can be done by any reasonable construction, even though they point primarily to another or a more limited class of cases. (*Scott* v. *Legg,* 2 Ex. Div. 42; *Doe* v. *Naterton,* 3 B. & A. 151; *R.* v. *Great Farringdon,* 9 B. & C. 541; *Norcutt* v. *Dodd,* Cr. & Ph. 100; *Barrach* v. *McCulloch,* 26 L. J. Ch. 105; *Marshall* v. *Guion,* 11 N. Y. 461; *In re N. Y. L. & W. R. R. Co.,* 25 Hun, 556; affirmed, 88 N. Y. 279.) If there be a *bona fide* endeavor to comply with the requirements of a general act for the creation of corporations, and a certificate be filed which is in good faith an attempt to

follow them, a corporation *de facto* is created, which has the right to sue and be sued. (*Eaton* v. *Aspinwall*, 19 N .Y. 119, 121; *B. & A. R. R. Co.* v. *Cary*, 26 id. 75, 77.) If the papers filed, by which the corporation is sought to be created, are colorable, but so defective that in a proceeding on the part of the State against it it would for that reason be dissolved, yet by acts of user under such an organization it becomes a corporation *de facto*, and no advantage can be taken of such defect in its constitution collaterally by any person. (*In re N. Y. El. R. R. Co.*, 70 N. Y. 338; *M. E. Church* v. *Pickett*, 19 id. 482; *Bk. of Toledo* v. *International Bk.*, 21 id. 542; *Holmes* v. *Gilliland*, 41 Barb. 588; *Mechanics' Bldg. Association* v. *Stevens*, 5 Duer, 676.) The mayor's commissioners had power to reconvene and amend the plans, and it was their duty to do so. (104 N. Y. 28; *People* v. *Allen*, 6 Wend. 486; *People* v. *Tompkins*, 64 N. Y. 53; *In re N. Y. Elevated R. R. Co.*, 7 Hun, 239, 241; *In re Empire City Bk.*, 18 N. Y. 199; *People* v. *Cook*, 4 Seld. 67; *In re Hollister B'k*, 23 N. Y. 508, 514; *Dawson* v. *People*, 25 id. 399, 405; *In re P. E. Public School*, 47 id. 556; *Gale* v. *Mead*, 2 Den. 160.) *Mandamus* would not lie against the commissioners until they had omitted to perform their duty. The time must have passed and they must have been absolutely derelict in order to allow that remedy. (*People* v. *Supervisors of Chenango Co.*, 8 N. Y. 330.) The act of 1870 was a remedial act, and is to be construed liberally. (Lieber's Legal Hermeneutics [3d ed.] 285, 286; 2 Black. Comm. 431; 1 Kent Comm. 461; *Hudler* v. *Golden*, 36 N. Y. 446; *Marshall* v. *Guion*, 11 id. 461; *People* v. *Utica Ins. Co.*, 15 Johns. 380, 381; *White* v. *Carpenter*, 2 Paige, 217, 229; *Campbell* v. *Perkins*, 8 N. Y. 430; *People* v. *Runkle*, 9 Johns. 147, 158; *Corbett* v. *Nutt*, 10 Wall. 464; *Sprowl* v. *Lawrence*, 33 Ala. 674.) The construction of the act of 1870 contended for is supported by the authorities on the subject of legislative recognition of an invalid corporation. (*Basshor* v. *Dressel*, 34 Md. 503; *St. Louis R. R. Co.* v. *N. W. St. L. R. Co.*, 2 Mo. App. 69; *Society for Propagation Gospel* v. *Town of*

*Pawlet*, 4 Peters, 480, 502; *Kanawha Coal Co.* v. *Kanawha & Ohio Co.*, 7 Blatch. 391, 406.) The same liberality should be extended to the construction of this act that has always been extended to the construction of acts for the amendment. of judicial proceedings. (*Wood* v. *Wood*, 26 Barb. 356; *Croghan* v. *Livingston*, 17 N. Y. 218; *N. Y. Ice Co.* v. *N. W. Ins. Co.*, 23 id. 357; *Rogers* v. *McLean*, 34 id. 536.). Notwithstanding the provision that a person shall not be. deprived of property without due process of law, the legislature may deprive a party of his right of appeal while the appeal is pending, and even after it has been argued. (*Gale* v. *Wells* [Ct. of App.], 7 How. Pr. 191; *In re Palmer*, 40 N. Y. 561; *Ex parte McCardle*, 7 Wall. 506.) The amended articles relate back, and are operative as of the date of the original articles. (104 N. Y. 37, 40; *Clapp* v. *Graves*, 26 id. 419, 420;. *Hatch* v. *Central Nat. B'k*, 78 id. 490; *Holman* v. *Holman*, 66 Barb. 220, 221; *Jackson* v. *McMichael*, 3 Cow. 75; *Jackson* v. *Bull*, 1 Johns. Cas. 81, 86, 90; *Lawrence* v. *Taylor*, 5 Hill, 107; *Moss* v. *Rossie Lead M. Co.*, 5 id. 137;. *Hankins* v. *Baker*, 46 N Y. 670; *Neele* v. *Berryhill*, 4 How. Pr. 16; *In re Christern*, 56 id. 5, 10; *Chichester* v. *Candee*,. 3 Cow. 39; *Randall* v. *Kruger*, 23 Wall. 137; *Nelson* v. *Mayor, etc.*, 63 N. Y. 545.) Where the preliminary steps. have been taken to form a corporation, and there is some defect in the proceedings which renders the organization incomplete, the parties interested may ratify the previous. action and perfect their organization, and the steps taken for that purpose will relate back to the time when the original articles were filed or action taken. (*Whitney* v. *Wyman*, 101 U. S. 392; *Milles* v. *Gleason*, 11 Wis. 47; *Stoneham* v. *Richardson*, 23 Pick. 62, 70; *Scott* v. *Ebury*, L. R., 2 C. P. 255; *Penobscot & K. R. R. Co.* v. *Dunn*, 39 Me. 587; *Anderson* v. *Santa Anna*, 116 U. S. 356, 364; *St. Joseph* v. *Rogers*, 16 Wall. 644, 664; *People* v. *Mitchell*, 35 N. Y. 551; *Gooday* v. *Colchester & S. V. R. Co.*, 17 Beav. 132;. 15 Eng. L. and Eq. 496; *Edwards* v. *Grand Junction R.. Co.*, 1 M. & C. 650; *Preston* v. *Liverpool, etc.,' R. Co.*, 1

Sim. N. S. 586; 7 Eng. L. and Eq. 124.) An unqualified refusal is a waiver of any objections to the form of an offer, tender or request. (*Cunningham* v. *Judson*, 100 N. Y. 179.) The act of 1884 must be construed, not only with reference to the well known facts that the company had been for a long time engaged in having its routes determined upon and adopted by the mayor's commissioners, and its articles of association framed, its stock subscribed for, and its capital in part paid in, all of which proceedings necessarily involved a large expenditure, but also with reference to the statute of 1870, under which any defects in its corporate existence could be supplied. (*People* v. *N. Y. C. Protectory*, 101 N. Y. 195; affirming, 38 Hun, 127; *In re Sackett St.*, 74 N. Y. 95; *Richards* v. *Richards*, 76 id. 186; *Bank of Hamilton* v. *Dudley's Lessee*, 2 Pet. 526.) It is not to be supposed that the legislature required the mayor's commissioners to decide upon plans with more precision than previous legislatures had done in special charters. (*East Broadway R. R. Co.*, chap. 512, Laws of 1860; *Seventh Ave. R. R. Co.*, chap. 513, Laws of 1860; *Williamsburg R. R. Co.*, chap. 323, Laws of 1864; *Buffalo R. R. Co.*, chap. 565, Laws of 1867; *Avenue C R. R. Co.*, chap. 625, Laws of 1868.) It was only necessary to present the general scheme of the railway to the abutting owners to lay the foundation for their consent or refusal to its construction. (*N. Y. Elevated R. Case*, 7 Hun, 241; 70 N. Y. 355–359.) What a surface road or a cable road or an elevated road is anybody knows, and of all such thing as are matters of common knowledge, the courts will take judicial notice. (1 Greenl. on Ev., § 6; *Swinnerton* v. *Col. Ins. Co.*, 37 N. Y. 188, 189; *People* v. *Synder*, 41 id. 398; *Elevated R. Case*, 3 Abb. N. C. 310; *Eaton* v. *Avery*, 83 N. Y. 31.)

*Everett P. Wheeler* for appellant. A resignation does not take effect until it is received and accepted by the authority to whom it is directed. (*Van Orsdell* v. *Hazard*, 3 Hill, 247.) The four commissioners had full power to act, notwithstanding the resignation of their associate. (2 R. S. 555, § 27;

3 R. S. [Banks 7th ed.] 2458; 3 R. S. [6th ed.] 862, § 29;. *People ex rel Kingsland* v. *Palmer*, 52 N. Y. 83, 87, 88.)

*D. J. Dean* for *the Mayor, etc.*, respondent. The General Term had no jurisdiction to appoint commissioners to determine whether the petitioner's road ought to be constructed or operated, the plan and articles of association being insufficient. (104 N. Y. 23.) If it should be conceded that the court commissioners were legally appointed, they have no jurisdiction to determine whether the petitioner's railway should be built. upon the so-called amended plan. (Laws 1875, chap. 606, § 39.)

*Waldo Hutchins, John M. Scribner, Edward Lauterbach,. Robert H. Shannon, Delos McCurdy* and *William C. Trull* for respondents. To give the General Term jurisdiction to appoint commissioners, there must be an existing corporation, routes located and plans decided upon as required by the act of 1875 and the submission thereof to property owners and a. refusal by them to consent to the construction and operation of the proposed railway. (Laws of 1875, chap. 606, §§ 4, 5;. *Broadway Underground R. R. Co.*, 23 Hun, 639; *N. Y. Cable Co.* v. *Mayor, etc.*, 104 N. Y. 1, 23, 33, 36, 38.) At the date of the petitioner's application to the General Term the statutes prohibited the construction of the petitioner's proposed railway. (Laws of 1884, chap. 252, § 16; *N. Y. Cable Co.* v. *Mayor, etc.*, 104 N. Y. 14, 19, 40.) The power of amendment of the articles of association conferred by the act of 1870 is limited to an informality existing by reason of an omission of any matter required to be therein stated. (25 Hun, 556; 88 N. Y. 279.)

GRAY, J. When the petitioner's matter was before this. court upon a previous appeal, it was decided that in certain respects the articles of association, as prepared by the mayor's commissioners, failed to comply with essential requirements. of chapter 606 of the Laws of 1875, known as the Rapid Transit Act, under the provisions of which, certain individuals. had sought legal incorporation by the name of "The New

York Cable Railway Company." (*New York Cable Co.
v. Mayor, etc.*, 104 N. Y. 1.) The decision referred to
mentioned as one defect that the commissioners had not pro-
vided, as section 7 of the act required they should, for a
release and forfeiture to the supervisors of the county of all
the rights and franchises acquired by the company, in case
of its failure to complete its railways within the prescribed
times. A further defect in the organization of the company
was that those commissioners had not decided, as it was required
of them by section 5, upon plans for the construction of the rail-
ways and other appliances specified in that section, and a compli-
ance with its requirements was essential to valid organization.

Because of the failure to comply with the requirements of
the act in those respects, there was no valid organization of
the incorporators. Those requirements are material and a
compliance with them is a condition precedent, upon perform-
ance of which depend legal incorporation and the acquisition
of powers and rights.

The opinion of this court was elaborate and comprehensive
in its exposition of the statute and of the scheme embraced
within its provisions, and it was concurred in, in the respects
mentioned, by all the members of the court. Since that
decision was made the appellants have sought to cure the
defects in their organization and thus to remove the objection
which existed to the exercise of corporate powers; and, to
that end, have caused to be made amendments of the articles
of association.

A meeting of the commissioners originally appointed by
the mayor, and who prepared the articles of association, was
called, and three attended. They proceeded to amend the
articles by inserting a provision for the release and forfeiture
of corporate rights and franchises, as section 7 of the Rapid
Transit Act required it should be; and they made locations of
works and detailed plans of construction for the railways to
comply with section 5. The directors of the company met
and they ratified and approved the action of the commissioners
and filed an amended certificate of incorporation.

The appellants insist that, by virtue of the proceedings which have been taken and had, they are now validly organized and have legal capacity to carry out corporate aims and purposes. Their argument, in effect, is based on these grounds, namely: That chapter 135 of the Laws of 1870 gave authority to the directors to so amend; that the mayor's commissioners had the power, as it was their duty, to reconvene and to amend, and that the amendments, when made, relate back and operate to give to the incorporators existence as a corporation *de jure*. They also contend that no legal objection exists to the confirmation of the report of the commissioners as to the surface railways; for, in that respect, this court's decision did not affect.

We think that the argument of the learned counsel for appellants proceeds upon a misapprehension of the effect of the decision of this court. The defects pointed out were fatal and were not of a nature which permitted of amendments which might relate back with force and curative effect. RAPALLO, J., said, referring to petitioner's organization, "unless validly organized in pursuance of the Rapid Transit Act, it acquired no right to construct the road, and, consequently, could not demand that the Supreme Court confirm the report of its commissioners as a substitute for the assent of a majority of the property owners and the order of confirmation would be of no avail if granted." (*N. Y. Cable Co. v. Mayor, etc., supra.*)

No powers, authority or franchises were conferred directly by the legislature on the petitioner. The act only prescribed the proceedings by which such could be acquired; and upon a substantial compliance with its material requirements necessarily depend the due organization and constitution of the corporation. Not to incorporate a provision for release and forfeiture as required by the act, and to leave the question of plans of construction of the railway and its appliances undetermined, and to relegate it to the discretion of the directors of the company, were material departures from the commands of the act. The act required, in its seventh section, that "the commissioners shall prepare appropriate articles of association

for the company  *  *  *  in which said articles of associ-
ation shall be set forth and embodied, as component parts
thereof, the several conditions, requirements and particulars
by said commissioners determined pursuant to sections 4, 5
and 6 of this act, and which further shall provide for the
release and forfeiture to the supervisors of the county of all
rights and franchises acquired by such corporation in case
such railway or railways shall not be completed within the
time and upon the conditions therein provided." The clause
as to forfeiture, which the commissioners substituted for the
specific provision contained in the act, was in clear violation
of the legislative command; while the plans of construction
did not furnish a knowledge of the kind of road, or of the
degree to which the streets would be obstructed, or of the
efficiency of the proposed mode of construction. The plans
were not such as when the local authorities and property
owners were applied to for their consents, they had before
them the necessary materials to form an intelligent judgment
whether the scheme proposed should or should not be assented
to. The substantial nature and the fatal effect upon petitioner's
attempted incorporation of the omissions adverted to, are no
longer subjects open to discussion. The determination by this
court was after the fullest hearing, and it was found that the
incorporators never acquired the franchise to be a corporation.
Essentials for a corporate existence were wanting. The powers
given by the act of the legislature had not been exercised in
such mode as to confer upon the association of individuals a
corporate capacity, and there was lacking the possession of
faculties and powers for the performance of those acts which
alone can be performed by the perfect statutory creature.

The argument of the learned counsel for the appellants does
not meet these grave objections. Chapter 135 of the Laws of
1870, cited by counsel, is not available to the petitioner.
That act provides as follows, namely : "The directors of any
corporation organized under any general act for the formation
of companies, in whose original certificate of incorporation any

informality may exist by reason of an omission of any matter required to be therein stated, are hereby authorized to make and file an amended certificate of incorporation to conform to the general act, and upon the making and filing of such amended certificate the said corporation shall, for all purposes, be deemed and taken to be a corporation from the time of filing such original certificate."

It might be said that the omissions pointed out in petitioner's incorporation were more than informalities, and that they could not be called errors of form, or omissions which rendered the certificate imperfect on its face. They were radical defects and went to the very right of the incorporators to be a corporation *de jure*. But a complete answer is that the act of 1870 is inapplicable in its provisions to the Rapid Transit Act of 1875. That act was intended to embrace the whole law on the subject of the formation of companies thereunder and as to the framing and adoption of articles of association therefor. Under its provisions the power and authority to make articles of incorporation are conferred upon the mayor's commissioners alone. It is their exclusive function to prepare them and, when completed, to deliver to the directors a certificate setting forth the articles and the organization of the company for the purposes mentioned in the act. With this explicit language of the statute, we think no power can be implied for the making of any articles of association by the directors, and, as a logical consequence, none for the making by them of any amended certificate of incorporation. Nor is continuance of existence and power attributable to the commissioners whom the mayor appointed, so as to enable them to reconvene and to reform either articles or certificate. By the thirty-ninth section of the Rapid Transit Act it is provided that "the terms of office of said commissioners shall determine and expire with the performance of their functions as herein provided." Those functions, and the time within which they are to be performed, are prescribed with great particularity in the act. The successive steps towards the formation of a corporation under the act are laid down, and a limit of time is fixed for the taking of each step

until that final one is taken when the commissioners deliver over to the directors their sworn certificate in duplicate "setting forth the articles of association and the organization of the company for the purposes in the act mentioned and provided for." That terminates their duties and ends their office. Thenceforth there remains for them no further exercise of powers given by statute, and they are *functi officio*. The statute prescribed the scope of their powers and duties, and the time within which they might act. The powers were delegated to them as a body created by force of the provisions of the act itself, and their performance was regulated and restricted by those provisions. It is not such a case as might be supposed where the statute is silent as to the mode or time of performance of official duties and a reservation of the exercise of further power upon the subject might be reasonably implied.

A fundamental objection, however, exists to the assertion of petitioner's claim here. The jurisdiction of the General Term of the Supreme Court to appoint commissioners depends for its exercise upon a refusal of the property owners to consent. The act makes especial provisions for obtaining the consent of the owners of one-half in value of the property bounded on the routes of the proposed railway and for a public notice by the mayor's commissioners, inviting the submission of plans for the construction and operation of such railway, and appointing a time and place for a meeting to decide upon such plans.

The original plans decided upon by the commissioners were adjudged to be in violation of the statute, and not plans at all, within its plain intent and requirements. Hence, the action of property owners in refusing their consent thereto can, in no sense, form any basis for petitioner's present application. The property owners and the local authorities, when applied to for their consent, must have offered to them, as a necessary prerequisite to an intelligent judgment, plans which leave no essential or material portions to the discretion of the company's directors. The present amended articles embodying new

plans for construction of petitioner's railways have not been submitted for the inspection and examination of the property owners; nor has their consent been sought for as the act requires. Consequently the conditions for an exercise of power by the Supreme Court in this matter do not exist.

It was an essential part of the statute, and an initiatory step to further proceedings under it, that the approval of property owners should be sought under prescribed conditions, favorable for the examination of the proposed routes and the plans of construction and operation of the railways. The absence of any proof of a substantial compliance with those conditions deprives the petitioner of any standing in court to make the application in question. Commissioners appointed by the court would have no right to consider and determine upon plans to which the consent of property owners had not been asked. The views we have expressed make further consideration of the points argued in the elaborate brief of the counsel for the petitioner unnecessary.

The General Term were right in holding that they were without jurisdiction to entertain the petitioner's application, and their order should be affirmed, with costs.

All concur.

Order affirmed.